# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLENN MICHAEL BRUNET** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1974** |
| **JERRY GOODWIN, WARDEN**<br>**DAVID WADE CORRECTIONAL CENTER** | **SECTION "S"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. STATE COURT PROCEDURAL BACKGROUND

The petitioner, Glenn Michael Brunet, is currently incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2] Brunet was charged by bill of information in Terrebonne Parish on August 9, 2006, with eleven (11) counts of felony carnal knowledge of a juvenile.[3] He entered a plea of not guilty on August 14, 2006.[4] The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> This case involves a sexual relationship between a school official and a sixteen-year-old student. The defendant, a Terrebonne Parish Sheriff's Deputy, was employed as a resource officer at South Terrebonne High School. As part of his job, the defendant provided counseling services for students, teachers, parents, and school administrators. In 2005, the victim, sixteen-year-old B.S., a student at South Terrebonne High, sought counseling from the defendant in connection with trouble she was experiencing in her family. According to B.S., she developed a student/counselor relationship with the defendant that eventually evolved into a sexual relationship. B.S. and the defendant started having oral sex in late October or early November 2005. The first instance of vaginal sexual intercourse occurred in the school auditorium on January 20, 2006, after a basketball game. B.S. kept a record of this and subsequent sexual encounters in vaginal, anal, and oral sex, both on and off of the school campus, on numerous other occasions. At the conclusion of each sexual episode, the defendant ejaculated in B.S.'s mouth.
>
> The sexual relationship between B.S. and the defendant lasted several months. The relationship eventually was revealed in June 2006, by B.S.'s friend, Crystal Rials. Rials had traveled to Pensacola, Florida, with B.S. and her stepsister, Sugeide Rios. When B.S. and Rios extended the vacation and refused to return home in time for Rials to make a scheduled court appearance, Rials contacted her mother and advised that she had been kidnapped by B.S. and Rios. Rial's mother reported the matter to the Lafourche Parish Sheriff's Office. Upon returning to Thibodaux, Rials, Rios, and B.S. were questioned by authorities. Rials reported that B.S. and the defendant had been involved in a sexual relationship and that the two had been together during the trip to Florida. When

---

[2]Rec. Doc. No. 5.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 8/9/06.

[4]St. Rec. Vol. 1 of 4, Minute Entry, 8/14/06.

questioned, B.S. initially denied having sexual intercourse with the defendant. Later, however, she admitted sexual contact with the defendant on only four occasions. In a second statement to the police, B.S. described several additional sexual episodes with the defendant.

State v. Brunet, 5 So.3d 316 (La. App. 1st Cir. 2009) (Table); State Record Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2008-KA-1670, pages 2-3, February 13, 2009.

Before trial, Brunet's counsel filed a motion to suppress a manila envelope containing condoms that was seized from Brunet's police unit without a warrant.[5] Brunet's counsel also filed a motion in limine to exclude evidence of other crimes, specifically evidence of two sexual encounters that were not charged against defendant.[6] At a pretrial hearing on September 10, 2007, the state trial court denied both motions.[7]

Brunet was tried before a jury on September 10 - 13, 2007. He was found guilty on counts one, three, ten and eleven of felony carnal knowledge of a juvenile and acquitted on the other seven counts.[8] At a hearing on September 25, 2007, the state trial court denied Brunet's motions for post-verdict judgment of acquittal and for a new trial.[9]

---

[5]St. Rec. Vol. 1 of 4, Motion to Suppress, 9/6/07.

[6]St. Rec. Vol. 1 of 4, Motion in Limine, 9/6/07.

[7]St. Rec. Vol. 1 of 4, Trial Minutes, 9/10/07; Trial Transcript, Volume I, pp. 22-24, 9/10/07.

[8]St. Rec. Vol. 1 of 4, Trial Minutes, 9/10/07; Trial Minutes, 9/11/07; Trial Minutes, 9/12/07; Trial Minutes, 9/13/07; Jury Verdict, 9/13/07; Trial Transcript, Volume I, 9/10/11; Trial Transcript, Volume II, 9/11/07; Trial Transcript, Volume III, 9/12/07; St. Rec. Vol. 2 of 4, Trial Transcript, Volume III (continued), 9/12/07; Trial Transcript, Volume IV, 9/13/07.

[9]St. Rec. Vol. 1 of 4, Sentencing Minutes, 9/25/07; St. Rec. Vol. 1 of 4, Motion for Post-Verdict Judgment of Acquittal, 9/20/07; Motion for New Trial, 9/20/07; St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 11-13, 18-20, 9/25/07.

After waiver of legal delays, the court sentenced Brunet that same day to serve five (5) years in prison at hard labor on each count, with the sentences for counts one and eleven to run consecutively to each other and the sentences for counts three and ten to run concurrently with each other and the sentences on the other two counts.[10]

On direct appeal to the Louisiana First Circuit, Brunet's appointed counsel alleged three errors:[11] (1) The evidence was not sufficient to support the convictions. (2) The state trial court erred in denying the motion to exclude other crimes evidence. (3) The state trial court erred in denying the motion to reconsider the sentence.  On February 13, 2009, the Louisiana First Circuit affirmed the convictions and sentences, finding no merit in the claims.[12]

Both Brunet and his appointed appellate counsel filed for review of this order in the Louisiana Supreme Court.[13]  The Louisiana Supreme Court separately denied both writ applications without stated reasons on November 20, 2009.[14]  Brunet's convictions became final 90 days later, on February 18, 2010, when he did not file a writ application

---

[10]St. Rec. Vol. 1 of 4, Sentencing Minutes, 9/25/07; St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 30-39, 9/25/07.

[11]St. Rec. Vol. 3 of 4, Appeal Brief, 2008-KA-1670, p. 3, 9/8/08.

[12]State v. Brunet, 5 So.3d at 316; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2008-KA-1670, 2/13/09.

[13]St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2009-K-582, 3/17/09 (showing postmark 3/13/09); La. S. Ct. Letter, 2009-KO-625, 3/20/09 (showing postmark of 3/11/09).  The State failed to provide the court with a copy of either writ application in spite of its obligation to do so.

[14]State v. Brunet, 25 So.3d 787 (La. 2009); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2009-K-0582, 11/20/09; State v. Brunet, 25 So.3d 788 (La. 2009); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2009-K-0625, 11/20/09.

with the United States Supreme Court. <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On April 14, 2010, Brunet's counsel submitted an application for post-conviction relief to the state trial court, alleging that he received ineffective assistance of trial counsel because his counsel failed to call key witnesses, failed to move for mistrial after the victim's mother violated the sequestration order, and referred to the charges as "consensual sex" rather than "alleged consensual sex," thereby giving the jury the impression Brunet was admitting an element of the crimes charged. The state trial court held a full hearing on November 3, 2010.[15] Relying on the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the court denied the application, finding that counsel made sound tactical decisions and that Brunet failed to establish deficient performance or that counsel's performance undermined the verdict.[16]

On February 18, 2011, Brunet's counsel submitted a writ application seeking review of that ruling in the Louisiana First Circuit.[17] The court denied the application

---

[15]St. Rec. Vol. 3 of 4, Hearing Minutes, 11/3/10; Hearing Transcript, 11/3/10.

[16]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 140-50, 11/3/10.

[17]St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 2011-KW-0311, 2/18/11. It is unclear from the record whether this writ application was timely filed. Its timeliness, however, is not an issue in this case.

without stated reasons on May 23, 2011.[18]  The Louisiana Supreme Court denied Brunet's subsequent pro se writ application without stated reasons on March 23, 2012.[19]

## II.    FEDERAL HABEAS PETITION

On August 27, 2012, the clerk of this court filed Brunet's petition for federal habeas corpus relief in which he raised four grounds for relief:[20] (1) The evidence was insufficient to support the convictions. (2) The state trial court erred in denying the motion to exclude other crimes evidence. (3) The state trial court erred in denying the motion to reconsider the sentence. (4) He received ineffective assistance of counsel because his counsel failed to call key witnesses, failed to move for mistrial after the victim's mother violated the sequestration order, and referred to the charges as "consensual sex" rather than "alleged consensual sex," thereby giving the jury the impression that he was admitting an element of the crimes charged.

The State filed a response in opposition to Brunet's petition in which it concedes timeliness and exhaustion.[21]  The State argues that the state courts' denial of relief was

---

[18]St. Rec. Vol. 3 of 4, 1st Cir. Order, 2011-KW-0311, 5/23/11.

[19]State ex rel. Brunet v. State, 84 So.3d 570 (La. 2012); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2011-KH-1376, 3/23/12; St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 11-KH-1376, 6/28/11 (postmarked and dated 6/20/11); St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2011-KH-1376, 6/28/11 (showing postmark of 6/20/11).

[20]Rec. Doc. No. 8, pp. 8-16.

[21]Rec. Doc. No. 9.

not contrary to or an unreasonable application of federal law, and Brunet is therefore not entitled to relief.

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Brunet's petition which, for reasons discussed below, is deemed filed in this federal court on July 25, 2012.[23]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on

---

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Brunet's petition was filed by the clerk of court on August 27, 2012, when the filing fee was received after denial of his pauper application. Brunet dated the signature on the petition July 25, 2012. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State has not asserted any of these procedural defenses to the petition.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000);  <u>Penry</u>, 532 U.S. at 792-93; <u>Hill</u>, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert</u>. <u>denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)

Brunet alleges that the evidence was not sufficient to prove that he was guilty of the charged offenses. He bases his claim on the fact that he was a sheriff's deputy for more than 18 years with an impeccable service record and that the victim B.S. was a troubled teenager with conduct problems and a history of making false allegations of sexual abuse. He contends that B.S. should not have been found to be credible by the jury. He also argues that the State was unable to produce any DNA evidence from the condoms, towel and sex toy that were tested.

Brunet's counsel asserted similar arguments on direct appeal to the Louisiana First Circuit. The court found the claim to be without merit under the standards established in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law. The court outlined the testimony related to counts one, three, ten and eleven, for which Brunet was convicted, and concluded that the jury was free to make credibility determinations to resolve the conflicts between the testimony of B.S. and Brunet. In doing so, the victim's testimony, when credited, was sufficient to support the convictions. The Louisiana Supreme Court also denied relief on this ground without stated reasons.

Under Jackson, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed.

Appx. 817, 821 (5th Cir. 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.

Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Brunet was convicted on four of eleven counts of felony carnal knowledge of a juvenile related to incidents occurring on January 20, 2006 (count one), February 10, 2006 (count three), April 25, 2006 (count ten) and May 8, 2006 (count eleven). Under Louisiana law at the time of these incidents, felony carnal knowledge of a juvenile occurred "when . . . [a] person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender; . . ." La. Rev. Stat. Ann. § 14:80(A)(1) (West 2006).

Louisiana law also defined "sexual intercourse" to include "anal, oral, or vaginal sexual intercourse." La. Rev. Stat. Ann. § 14:80(B) (West 2006). The law also provided that "[l]ack of knowledge of the juvenile's age shall not be a defense. Emission is not

necessary, and penetration, however slight, is sufficient to complete the crime." La. Rev. Stat. Ann. § 14:80(C) (West 2006). In addition, Louisiana law is settled that the testimony of the victim alone, even without corroborating evidence, is sufficient to prove a sex offense, including carnal knowledge of a juvenile. State v. Blackwell, 746 So.2d 205, 212 (La. App. 2d Cir. 1999); State v. Hampton, 716 So.2d 417, 418 (La. App. 1st Cir. 1998); State v. Francis, No. 2010-0790, 2010 WL 4278278, at *3 (La. App. 1st Cir. Oct. 29, 2010) (citing State v. Hampton, 716 So.2d at 418-421).

It is undisputed that at the time of the charged incidents, Brunet was 46 years old and B.S. was 16 years old.[24] Brunet's challenge is that the evidence was insufficient to prove he had sexual intercourse with B.S. at any location or time. As noted above, his challenge is based on his contention that B.S. was not a credible witness; that his own testimony was credible; and that there was no physical evidence, i.e. DNA evidence, to support her testimony. The following summarizes the relevant trial testimony as to the four counts for which Brunet was convicted.

B.S. testified that she met Brunet at a friend's fishing camp when she was 14 years old.[25] She continued to see him while attending South Terrebonne High School in the

---

[24]St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 70, 9/10/07; Trial Transcript, Volume III, p. 5, 9/12/07; St. Rec. Vol. 2 of 4, Trial Transcript, Volume IV, p. 6, 9/13/07.

[25]St. Rec. Vol. 1 of 4, Trial Transcript, Volume III, p. 6, 9/12/07.

ninth and tenth grades.[26]  They also kept in touch by e-mail when she moved temporarily

to Alexandria, Louisiana, at the end of her tenth grade year.  She returned to South

Terrebonne for her junior year shortly before her sixteenth birthday.[27]

On September 30, 2005, she was at a school football game with a boy who was

scaring her with inappropriate advances.[28]  She spoke with Brunet about it, and he gave

her his cell phone number to call him if she needed a ride home.  On the way home from

the game, B.S. became frightened when the boy pressed his advances, and she e-mailed

Brunet from her phone asking for help.[29] Brunet called her back, and she explained where

they were as they were driving home.  Brunet eventually caught up with the boy's car

and pulled him over under a false traffic stop.  Brunet took B.S. home because it was

almost curfew.

Over a period of time, B.S. began talking with Brunet about her family problems,

including a prior incident of molestation by her brother.[30]  B.S. testified that she trusted

Brunet and that he wrote her letters by e-mail under a code name, Naomi.[31]  She also

---

[26]Id., p. 6.

[27]Id., pp. 6-7.

[28]Id., p. 7.

[29]Id., p. 8.

[30]Id., pp. 9-10.

[31]Id., p. 12.

14

wrote a letter to him by e-mail in the fall of 2005 expressing her feelings for him.[32] Some of the letters and e-mails were introduced into evidence, including those signed by "Naomi."

During her junior year, the phone calls, e-mails and her visits with Brunet at school increased in frequency.[33] They began having oral sex at the end of October or beginning of November 2005, once in his office and many times in his car.[34] She later marked her calendar with the dates on which she and Brunet had vaginal intercourse.[35] Her testimony included a detailed description of the interior of Brunet's boat, where she had sex with him once in Terrebonne Parish and once in Florida.[36] She also provided a description of the layout of a house under construction near St. Charles Street where they had vaginal intercourse on April 25, 2006.[37] B.S. also testified that every time they had oral or vaginal sex, Brunet would remove the condom, if he had one on, and ejaculate into her mouth.[38]

---

[32]Id., pp. 13, 15.

[33]Id., p. 16.

[34]Id., pp. 16, 20.

[35]Id., pp. 19-20.

[36]Id., pp. 44, 106, 115.

[37]Id., p. 78.

[38]Id., p. 22.

B.S. testified that they first had vaginal intercourse on January 20, 2006 (count one) at the school after a basketball game.[39] Brunet met her in the auditorium on the stage behind the curtains. When he arrived, he had an envelope and escorted her to a dressing room upstairs. She thought they were going to have oral sex, but he took off his clothes and told her to do the same.[40] He then pulled assorted condoms and a tube of lubricant from the envelope.[41] He also had baby wipes and a black plastic bag in the envelope. They then had vaginal intercourse during which Brunet would take the condom on and off as they continued the intercourse, and he eventually ejaculated into her mouth.[42]

B.S. described another incident that occurred on February 10, 2006 (count three), which occurred in the school auditorium after a basketball game.[43] He laid out a blanket, and they had vaginal sex, after which he ejaculated into her mouth.[44]

---

[39]Id., p. 20.

[40]Id., pp. 20-21.

[41]Id., p. 21.

[42]Id., p. 22.

[43]Id., pp. 25, 26.

[44]Id., pp. 26.

B.S. also testified that they had vaginal intercourse on April 25, 2006 (count ten), which she first indicated occurred at the school auditorium.[45]  She later clarified that on that date, Brunet had taken her to one of his construction sites on Tigerlilly Drive.[46]  She recalled that on April 24 and 25, 2006, she helped Brunet dump wood trash and mark concrete to be scored at the house on Tigerlilly Drive.[47]  After working on April 24, 2006, she helped him wash the dust off of his legs.  After leaving the house, he drove down the street where he stopped the car, unzipped his pants, and had her perform oral sex on him.[48]  Afterwards, he drove to a parking lot of a school or library in the same neighborhood.[49]  While there, they had vaginal intercourse.[50]  He then took her home.[51]

On April 25, 2006, they returned to work at the house on Tigerlilly.[52]  When they finished, he took her to a friend's house.[53]  After leaving there, Brunet drove to another

---

[45]Id., p. 33.

[46]Id., p. 37.

[47]Id., pp. 63-65.

[48]Id., p. 66.

[49]Id., pp. 66-67.

[50]Id.

[51]Id., p. 68.

[52]Id., p. 69.

[53]Id., pp. 70, 73.

house under construction near St. Charles Street.[54]  While there, they both stripped and had vaginal intercourse on the tub in the unfinished bathroom.[55]

On May 8, 2006 (count eleven), which was Brunet's 46th birthday, there was an athletic award ceremony at the school.[56]  Brunet called B.S. at home and told her to meet him at the school.  She went to the school and waited for him outside at a picnic table. He met her there and took her into the building through the guidance counselor's private door.  He took her up the stairs through a door near a classroom.[57]  Brunet hesitated for a minute to speak to Rusty Price, a coach at the school,[58] who saw them pass his door. They eventually made it to the top of the stairs and onto the roof.  Brunet placed a white bucket in the doorway to hold the door open.[59]  After he took off his weapon and most of his police uniform, they had vaginal intercourse while standing up behind the roof door.[60]

---

[54]Id., p. 70.

[55]Id., p. 76.

[56]Id., pp. 33-34.

[57]Id., p. 35.

[58]St. Rec. Vol. 1 of 4, Trial Transcript, Volume II, p. 91, 9/12/07.

[59]Id., p. 36.

[60]Id., pp. 36, 81-83.

Among others, the jury heard the testimony of Coach Price. He testified that his office is across the hall from the stairway giving access to the roof.[61] He stated that in May 2006, he was in his office copying videos after an athletic awards banquet which ended around 7:30 p.m.[62] At around 8:00 p.m., he saw Brunet at the doorway to his classroom. After they spoke briefly, Brunet headed downstairs.[63] Price saw Brunet a second time that evening, and he was with a girl, whom he only saw from the back.

James Carpenter testified that in May or June 2006, he borrowed from Brunet a brown envelope filled with condoms in preparation for a date with whom he planned to have sex.[64] Carpenter returned the envelope to Brunet, and it still had 25 or 30 condoms in it.[65] He also stated that he left a small bag in the envelope in which his date had put a tube of KY jelly and some wipes.[66]

Carpenter's brother, Bryce Carpenter also testified that he recalled working alone with Brunet at several locations on May 13, 2006.[67] Bryce indicated that he was with

---

[61]Id., p. 92.

[62]Id., p. 92-93.

[63]Id., p. 94.

[64]St. Rec. Vol. 2 of 4, Trial Transcript, Volume III (continued), p. 144, 9/12/07.

[65]Id., p. 145.

[66]Id.

[67]Id., p. 155-58.

Brunet until after 6:30 p.m.[68] He also testified that he remembered the date only because

Brunet told him stories about his two brothers who were born on February 13th and May

13th, and he associated that with the date they were working.[69]

The record shows that the jury heard the consistent testimony of the victim, B.S.,

that she and Brunet had repeated occasions of consensual sexual intercourse, including

encounters on the dates charged in the bill of information and for which he was

convicted. The only other witness with direct knowledge on that issue was Brunet

himself, and he denied ever having any such encounters. While the jury heard other

testimony, which may have conflicted in part with B.S.'s testimony, as Brunet points out,

the crucial issue for the jury was credibility.

Based on the verdict on those four counts, the jury obviously credited and believed

B.S., not Brunet. The jury as the factfinder was in the best position to make that

determination, and it was a matter appropriately left to them. Schlup v. Delo, 513 U.S.

298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is

generally beyond the scope of review."); Ramirez, 398 F.3d at 695 ("All credibility

choices and conflicting inferences are to be resolved in favor of the verdict.").

A federal court does not have the authority to overturn a state court conviction

simply because it might have weighed the evidence differently or reached a different

---

[68]Id., p. 158.

[69]Id., p. 158-59.

conclusion in the case. As indicated above, under <u>Jackson</u>, a federal court "does not focus on whether the trier of fact made the correct guilt or innocence determination;" rather, the federal court looks only to whether the trier of fact "made a rational decision to convict or acquit." <u>Herrera</u>, 506 U.S. at 402; <u>see also</u>, <u>Santellan</u>, 271 F.3d at 193. Under that exacting standard, it cannot be said that the jury acted irrationally in finding Brunet guilty when the evidence is viewed in the light most favorable to the prosecution and the verdict. The record is replete with testimony and facts for a rational jury to find that Brunet at age 46 had consensual sex with B.S., age 16 at the time, on January 20, 2006 (count one), February 10, 2006 (count three), April 25, 2006 (count ten) and May 8, 2006 (count eleven).

In rejecting Brunet's challenge to the sufficiency of the evidence, the state courts identified the proper standard under <u>Jackson</u> and applied it in a reasonable manner. Brunet has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Brunet is not entitled to relief on this claim.

## VI.    OTHER CRIMES EVIDENCE (CLAIM NO. 2)

Brunet alleges that the state trial court improperly allowed the State to present evidence of other sexual encounters with B.S., two at a hotel in Thibodaux, Louisiana, and one in Florida, that were not charged in the indictment. He argues that this violated La. Code Crim. P. art. 412.2 because the court failed to conduct a thorough balancing

test. Brunet argues that the evidence should have been excluded because it was more prejudicial than probative.

On September 6, 2007, Brunet's trial counsel filed a motion in limine under La. Code Evid. art. 403, seeking to exclude as prejudicial evidence of "two episodes of alleged carnal knowledge occurring in Lafourche Parish and Pensacola, Florida," which the State sought to use at trial under La. Code Evid. art. 412.2.[70]

Louisiana Code of Evidence article 412.2(A) provides in relevant part that certain evidence of other sexual activity may be admissible:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The referenced article, La. Code Evid. art. 403, provides that a balancing test be considered to determine whether evidence should be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

---

[70]St. Rec. Vol. 1 of 4, Motion in Limine, 9/6/07; Notice of the State's Use of Other Crimes Evidence, 9/5/07.

At a pre-trial hearing on September 10, 2007, counsel argued that the evidence of sexual activities in Florida and at the Deauville Hotel in Thibodaux, Louisiana, was "overkill" and prejudicial in light of the eleven counts already charged.[71] The State argued that Article 412.2 allowed the uncharged sexual acts to be introduced. The State intended to use some acts of carnal knowledge that occurred before vaginal intercourse began in an effort to "tell[] a whole story" from the beginning of sexual activity through the Florida incident that brought their illicit relationship to light.[72]

The state trial court conducted its balancing test pursuant to La. Code Evid. art. 403 and denied the defense motion.[73] The court reasoned that the evidence involved the same victim and was an integral part of the ongoing relationship between the victim and Brunet. As such, the court found that the probative value of the evidence outweighed its prejudicial effect.

Brunet's appellate counsel raised this issue again on direct appeal, arguing that there was no evidence to support the allegations and its prejudicial effect outweighed any probative value, especially since the relationship could have been shown through evidence of the eleven charged events. He therefore argued that the state trial court erred in denying the motion.

---

[71]St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 13, 9/10/07.

[72]Id., p. 14.

[73]Id., pp. 15-16.

The Louisiana Fifth Circuit found the claim meritless and reiterated the trial court's findings that the evidence was admissible under La. Code Evid. art. 412.2 and formed an integral part of the sexual relationship between Brunet and B.S. The court resolved that the probative value outweighed any prejudice under La. Code Evid. art. 403. The Louisiana Supreme Court subsequently denied the related writ applications without stated reasons.

To the extent Brunet argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. See Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. Burgett v. Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir.

1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.) In keeping with this principle, the United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial." Gonzales, 643 F.3d at 430 (quotation omitted).

This issue presents a mixed question of law and fact. Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

As an initial matter, Brunet has failed to establish any error by the state trial court which would trigger review under the due process standards set forth above. Robinson v. Whitley, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). The Louisiana Supreme Court has held that La. Code Evid. art. 412.2, under which the evidence was admitted, was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children. State v. Williams, 830 So.2d 984, 986-987 (La. 2002). In State v. Williams, the Louisiana

Supreme Court likened Article 412.2 to Fed. R. Evid. 413,[74] except to note that the federal rule declared that such evidence "is admissible" and the state rule declares that it "may be admissible." Id.

Brunet also references the federal rules in an effort to support his claim that the state trial court did not perform an adequate balancing test. Both the state and federal rules are subject to the balancing test between probative value and prejudicial effect. United States v. Dillon, 532 F.3d 379, 387 (5th Cir. 2008) ("Evidence admissible under Rule 413 is still subject to the Rule 403 balancing test, so it may be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice.'") (citing Fed. R. Evid. 403); State v. Hernandez, 93 So.3d 615, 629 (La. App. 5th Cir. 2012) (same with regard to La. Code Evid. 412.2). Like the Louisiana courts with Article 412.2, the federal courts have noted that "Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." United States v. Enjady, 134 F.2d 1427, 1431 (10th Cir. 1998); United States v. Guidry, 456 F.3d 493, 502-03 (5th Cir. 2006) ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's

---

[74]Fed. R. Evid. 413(a) provides as follows: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." The terminology of Rule 413 was amended in 2011 for stylistic purposes only. See Advisory Committee Notes, 2011 Amendments foll. Fed. R. Evid. 413(a).

extrinsic sexual misconduct as character or propensity evidence.") (citing <u>Enjady</u>, 134 F.2d at 1431).

In this case, the probative value of providing information about the other incidents of sexual acts with B.S. far outweighed any potential prejudice. As determined by the state trial court before trial, the evidence was relevant to detail the progressing sexual relationship between Brunet and B.S. The testimony was clear that the earlier incidents of oral sex occurred over time as their personal and sexual relationship progressed. The encounters in Florida were the final events that led to the disclosure of the relationship and Brunet's arrest. These consensual sexual encounters were the beginning and the end of a story that was necessary for the jury to frame the other occurrences of consensual sexual intercourse that were charged. Significantly, the state trial court also gave limiting instructions to the jury at the close of trial regarding the restricted use of this other crimes evidence presented at trial.[75]

There is no indication in the state court record that the other crimes testimony misled the jury into an improper verdict. As outlined previously, the jury's mixed verdict (guilty on four counts, not guilty on seven others) evinced a concerted and conscientious effort on its part to consider the evidence of each charged crime on its own. As discussed above, the evidence presented at trial was sufficient to convict Brunet under the <u>Jackson</u> standard.

---

[75]St. Rec. Vol. 2 of 4, Trial Transcript, Volume IV, p. 117-18, 9/13/07.

Brunet has not demonstrated in the instant case that the other crimes evidence constituted inadmissable evidence which could have rendered his trial fundamentally unfair.  Because he has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial.  Robinson, 2 F.3d at 567; Neal v. Cain, 141 F.3d at 214.  Even if he had shown an error, the evidence was not so prejudicial as to violate due process.

The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Brunet claim is without merit.

VII.   EXCESSIVE SENTENCE (CLAIM NO. 3)

Brunet alleges that the state trial court erred in denying his motion to reconsider the consecutive designation of his sentences as excessive.  He argues that, while La. Code Crim. P. art. 883 allows for consecutive sentences to be imposed on convictions arising from the same conduct, the facts of his case did not justify consecutive sentences.

Brunet's counsel raised this issue on direct appeal.  The Louisiana Fifth Circuit denied relief, finding no merit to the claim and no error in the trial court's denial of the motion to reconsider the sentence.  The court revisited the record and reasons for sentencing given by the trial court and determined that there was ample justification for the trial court to have imposed consecutive sentences.  The court found no error in the trial court's denial of the motion to reconsider the sentences.

To the extent Brunet is arguing that his consecutive sentences are excessive under Louisiana law, or that the state trial court erred under Louisiana law in denying his motion to reconsider, his claim is not cognizable in this federal proceeding.  Smith v. Cain, 253 F.3d 700, 2001 WL 498441, at *1 (5th Cir. Apr. 9, 2001).  It is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."   Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); see also Swarthout, 131 S. Ct. at 861 (federal habeas review does not lie for alleged errors of state law).   Therefore, even if Brunet's sentences were excessive under the Louisiana Constitution or if the trial court failed to comply with state law concerning sentencing procedures, which are issues this court need not and does not reach, those errors would not be correctable in a federal habeas corpus proceeding.  See, e.g., Butler v. Cain, 327 Fed. App'x 455, 457 (5th Cir. 2009) (Claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ( ". . . a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.  . . . [T]his Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.").

To the extent Brunet contends that his consecutive sentences are excessive under federal law, specifically the Eighth Amendment of the United States Constitution, his claim fares no better.  Brunet received five years in prison on each of the four counts on which he was convicted.  Brunet does not specifically challenge the length of the

individual sentences imposed. Instead, his challenge is directed to the consecutive nature of the five-year sentences imposed on counts one and eleven, which in effect commits him to ten years in prison.

The fact that two of the sentences are to run consecutively does not render them excessive. First, the question of whether sentences are to run concurrently or consecutively is a matter of state law, errors of which are not cognizable on habeas corpus review. Bergeron v. Sigler, 241 F.2d 412, 412 n.1 (5th Cir. 1957) (challenges to consecutive sentences are a matter of state law); Cochran v. Thaler, No. 07-CV-0068, 2010 WL 5790338, at *8 (N.D. Tex. Sep. 10. 2010) (same), report adopted, 2011 WL 530723 (N.D. Tex. Feb. 4, 2011); Benoit v. Cain, No. 07-0039, 2009 WL 4572903, at *21 (W.D. La. Dec. 4, 2009) (judgment adopting report). I note, nevertheless, that Louisiana law concerning consecutive sentences is found in La. Code Crim. P. art. 883, which provides as follows:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

Brunet concedes that the prosecution was based on an alleged continuing relationship and series of sexual encounters with the same victim. Under the foregoing statute, the sentences could run concurrently, "unless the court expressly directs that

some or all be served consecutively."  Consequently, under Louisiana law, it was within the state trial court's discretion to impose consecutive sentences.

Under the Eighth Amendment standard, imposition of consecutive, as opposed to concurrent sentences, does not alone determine whether a sentence is an unconstitutionally excessive sentence.  Instead, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996);  McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

If the sentence is not "grossly disproportionate," however, in the first instance, the inquiry is finished.  United States v. Gonzales, 121 F.3d 928 (5th Cir.1997), cert. denied,

522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare," and constitutional violations are sustained in only "extreme" or "extraordinary" cases. Ewing v. California, 538 U.S. 11, 23-30 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003).

Brunet faced a sentence on each count of a fine of not more that $5,000, or imprisonment, with or without hard labor, for not more than ten years, or both. La. Rev. Stat. Ann. § 14:80(D)(1). The court did not impose a fine on Brunet. He was sentenced to serve five years in prison on each of counts one and eleven, to run consecutively, and to serve five years in prison on each of counts three and ten, to run concurrently with each other and the sentences on counts one and eleven. Brunet's individual sentences of five years on each count were within the statutory range. In fact, the length of the two consecutive sentences with an aggregate of ten years is also within the statutory range.

Contrary to Brunet's suggestion, before imposing the sentences, the state trial court spoke at length about the facts and circumstances of the case and gave specific reasons to support the sentences imposed. The court read from the Louisiana Supreme Court's opinion in State v. Granier, 765 So.2d 998, 1001 (La. 2000), in which the court emphasized that there is a presumption that "because of their innocence and immaturity, juveniles are prevented from appreciating the full magnitude and consequences of their actions. At the heart of these types of statutes is the concern that juveniles should not be

exploited for sexual purposes regardless of their 'consent.'"[76] The court noted that Brunet was a law enforcement officer in a position of trust at the high school.[77] Recognizing the comments received on Brunet's professionalism on the job, the trial judge also noted the fact that Brunet was not a licensed counselor and placed himself in an unreasonable position when he had excessive contact with the victim both on and off the job.[78] The court took into account the breach of trust and the fact that some of the detailed sexual activity took place on school property. Citing the sentencing considerations under La. Code Crim. P. art. 894.1, the court resolved that there was an undue risk of future crimes, that a sentence other than incarceration would lessen the seriousness of the crime, and that Brunet should have known that the victim was particularly vulnerable and incapable of resistance. The court also found that Brunet used his position with the school to facilitate the crimes.

Louisiana courts have imposed similar or worse sentences in cases where the offender was in a position of trust over the victim. See, e.g., State v. Blackwell, 774 So.2d 1209 (La. App. 2d Cir. 2000) (35-year-old high school coach and teacher convicted of eight counts where he had consensual intercourse with a 16-year-old female student during a two to three month relationship and sentenced to concurrent terms of 10

---

[76]St. Rec. Vol. 2 of 4, Sentencing Transcript, p. 32, 9/25/07.

[77]Id., p. 33.

[78]Id., p. 34.

years on two counts and consecutive two year sentences on six counts for an aggregate sentence of 12 years at hard labor); State v. Berry, 732 So.2d 638 (La. App. 2d Cir. 1999) (10 year sentence not excessive after plea to carnal knowledge by 26-year-old with no prior record and whose victim was the 13-year-old daughter of a friend); State v. Armstrong, 637 So.2d 629 (La. App. 2d Cir. 1994) (10 year sentence not excessive after guilty plea to carnal knowledge by 36-year-old whose victim was his 12-year-old stepdaughter).

Brunet has not established that the punishment imposed upon him was grossly disproportionate to the crimes he committed or that the consecutive sentences violated the Eighth Amendment. See Smith v. Cain, No. 07-1504, 2007 WL 2461663, at *8 (E.D. La. Aug. 23, 2007) (order adopting report and recommendation) (finding no authority for the proposition that the imposition of consecutive sentences is impermissible under the United States Constitution).

For the reasons discussed above, the state courts' finding that Brunet's sentences were constitutional was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent. Brunet is not entitled to relief on this claim.

VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 4)

Brunet alleges that his counsel provided ineffective assistance in that he failed to call witnesses to attack the victim's credibility. He references affidavits, not provided

34

to this court, from several people whose names were purportedly provided to counsel pretrial and who would have testified about B.S.'s tendency to lie and her on-line bragging about her sexual exploits with other people. The proposed witnesses and affiants were Monica Chauvin, Carol Laurent, Priscilla Peterson-Eady, Vincent Kraemer and James Carpenter.

Brunet further argues that his ability to challenge B.S.'s credibility was compromised by her mother's breach of the sequestration order and counsel did not move for a mistrial. He also argues that counsel failed to refer to the charges as "alleged" consensual conduct thereby leaving the jury with the impression that he was admitting to an element of the crimes charged.

Brunet's post-trial counsel raised these same arguments in the application for post-conviction relief. The state trial court held a full evidentiary hearing, at which prior defense trial counsel, James Alcock, Brunet and other witnesses testified. Brunet's post-conviction counsel asked detailed questions of Alcock about the uncalled witnesses and their affidavits, including the allegation that B.S. was intimidated by the defense witness, James Carpenter, the sequestration order issue, and his failure to use the word "alleged" when referencing the consensual conduct. After hearing all of the testimony, and relying on the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), the state trial

court found no merit in the claims.[79]  First, the court resolved that the intimidation accusation made by B.S. regarding James Carpenter and his subsequent arrest occurred after his trial testimony and had no prejudicial or compromising effect on the outcome of the trial.[80]

With respect to the sequestration issue, the court noted that there was no evidence that B.S. received information from her mother that she would not ordinarily have had access to as the victim had she chosen to remain in the courtroom.[81]  The court resolved that this also could not have affected the outcome of the trial. In addition, the two witnesses who were allegedly the subject of the conversation between B.S. and her mother actually testified favorably to the defense.  The court found that, even if there had been a violation of the sequestration order, there was no prejudice to the defense.  Based on these findings, the court determined that counsel's failure to move for a mistrial was not error and did not have an impact on the jury's verdict.[82]

The state trial court also indicated that testimony about the victim's alleged propensity to lie was not an appropriate defense in a criminal case under La. Code Evid.

---

[79]St. Rec. Vol. 3 of 4, Hearing Transcript, 11/3/10.

[80]Id., p. 142.

[81]Id., p. 143.

[82]Id., p. 144.

art. 608, which would have excluded Chauvin's testimony.[83]  The court also noted that La. Code Evid. art. 412 prohibited certain reputation and opinion evidence regarding the victim's past sexual behavior with persons other than the accused.[84]  The court indicated that only evidence regarding the source of DNA or injury could be presented, and none of that was relevant in Brunet's case.  Thus, because the evidence of reputation and prior sexual activity was not admissible, the testimony of Petersen-Eady on these matters would not have been admissible.[85]

The court also held that defense trial counsel did not err or cause prejudice through his voir dire statements regarding the consensual nature of the acts.[86]  The court found that defense trial counsel made considered, tactful decisions and employed his experience to argue in a manner to avoid alienating the jury.

The court also noted defense counsel's exercise of open file discovery, his access to the witnesses and their statements, and his access to the DNA test results.[87]  Counsel in fact filed a pretrial motion in limine to exclude testimony about the offenses in Florida and a motion to suppress evidence seized from Brunet's police unit without a warrant.  The court also noted that the jury's verdict was deliberate, selective and individualized,

---

[83]Id., pp. 145, 147.

[84]Id., pp. 145-46.

[85]Id., p. 146.

[86]Id., p. 149.

[87]Id., p. 142-43.

finding guilt on only four of the eleven charges.[88] The court found that defense counsel did not act deficiently and, if there were any errors, they were not so serious as to undermine the verdict.[89]  Having made these findings, the state trial court denied relief on the application.

The Louisiana First Circuit and the Louisiana Supreme Court denied Brunet's subsequent writ applications concerning the ineffective assistance claim without stated reasons. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, relied upon by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of

_____

[88]Id., pp. 144, 149.

[89]Id., p. 150.

counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466

40

U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.    Uncalled Witnesses

Brunet contends that counsel erred in failing to call additional witnesses to challenge B.S.'s credibility. He references the affidavits of Monica Chauvin, Carol Laurent, Priscilla Petersen-Eady, Vincent Kraemer and James Carpenter that were submitted with his application for post-conviction relief in the state trial court, although not submitted with his federal petition.[90] Construed broadly, Brunet's argument appears to be that the affidavits established expected testimony from these potential witnesses that would have affected the jury's credibility assessment and the verdict.

He suggests that Monica Chauvin, an officer in the school's band booster club, would have testified that B.S. falsely accused her of improperly reprimanding B.S. for leaving the band area instead of caring for her when B.S. allegedly became ill at a school function. Carol Laurent was the booster club president who investigated the incident and concluded that B.S. was not wholly honest about the incident with Chauvin, whom she believed to be a helpful member of the booster club.

Priscilla Petersen-Eady would have testified that Brunet often assisted her parents in chaperoning her and her friends at parties and on trips, and he never engaged in

---

[90]St. Rec. Vol. 3 of 4, Chauvin Affidavit, 2/25/10; Laurent Affidavit, 2/26/10; Petersen-Eady Affidavit, 2/24/10; Kraemer Affidavit, 2/25/10; Carpenter Affidavit, 2/25/10.

inappropriate behavior. She also would have testified that, during the time period at issue, B.S. bragged in Myspace postings about her sexual encounters with various men and boys other than and not including Brunet.

Another potential witness, Vincent Kraemer, would have testified that he had been on the roof of the school several times to shoot class photographs, and he had seen a bucket being used to hold the door open. He argues that this was contrary to B.S.'s trial testimony that Brunet had to find a bucket to hold the door open.

As for James Carpenter, who did testify at trial, Brunet argues that counsel should have recalled him to testify about the false charges of intimidation that were asserted against him by B.S. after he testified on Brunet's behalf at trial. Carpenter was arrested on the charges, and the charges were eventually dropped.

On federal habeas corpus review, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, Brunet obtained affidavits from his prospective witnesses, albeit more than three years after trial, to establish how the uncalled witnesses would have testified. At the post-conviction hearing in the state trial court, Brunet's trial counsel was questioned thoroughly about his decisions not to call these witnesses for the proposed purposes. Defense trial counsel acknowledged that he was provided with some witness statements or information before trial.[91] He also indicated that of the new affidavits he had seen, the contents appeared similar to what he was told prior to trial. He also recalled discussing trial strategy with Brunet and his girlfriend, including without controversy which witnesses would be called.[92]

As to Chauvin's affidavit, defense trial counsel testified that he actually spoke with Chauvin before trial.[93] His judgment was that her testimony about the bathroom incident was irrelevant and would have been counterproductive before the jury. Based on his experience, he believed that this testimony would have been perceived as "tenuous" and "grabbing at straws."[94] He also did not find that the isolated incident demonstrated a pattern or propensity to lie.

---

[91]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 28, 11/3/10.

[92]Id., pp. 70-71.

[93]Id., p. 68.

[94]Id., pp. 30, 69.

Defense trial counsel also testified that he discounted the proposed testimony of Petersen-Eady, because it did not provide a specific time frame for the Myspace postings,[95] and it did not establish that the statements were true, or that they necessarily meant that B.S. was not also having sex with a school officer.[96]  During his testimony at the hearing, the state trial court discussed with counsel and the prosecutor the inadmissibility of such evidence under La. Code Evid. art. 412, which prohibits evidence of the victim's sexual behavior with anyone other than the accused.[97]  Defense counsel indicated that to be his appreciation of the law regarding the victim's behavior.[98]

Defense trial counsel also indicated that he did not recall ever being provided with the statements from Kraemer about the bucket allegedly used to hold the door open on the roof.[99]  In addition, he felt that this testimony would have been unnecessary and irrelevant in light of Brunet's own testimony that he never went to the roof with B.S. and knew nothing about the bucket.[100]  Defense counsel also noted that Kraemer did not provide the dates on which he was on the school roof to compare it to the relevant time period.  Counsel felt that Kraemer's testimony would have served to corroborate for the

---

[95]Id., pp. 32-33.

[96]Id., pp. 33, 52.

[97]Id., pp. 35-37.

[98]Id., p. 64.

[99]Id., p. 40.

[100]Id., pp. 39, 41.

jury B.S.'s own testimony about a bucket being available and used to hold open the roof door,[101] thus bolstering B.S.'s credibility against Brunet's best interest.

Defense trial counsel recalled being informed at some point that B.S. had accused James Carpenter of witness intimidation after an encounter in a local Wal-Mart store on the evening after he testified for the defense; however, he did not recall specifically when he was made aware of it.[102] He did recall learning of the disposition of the charges well after the trial had ended.[103] Counsel affirmed that he had no information to give the jury about the charges being dropped, since none of that occurred until well after trial was completed.[104] He indicated that it was fair to say that information about the intimidation charge may also have led the jury to believe that Brunet was intimidating the victim through his defense witnesses.[105]

Having heard this testimony and that of the other witnesses at the post-conviction hearing, the state trial court found that defendant's trial counsel had exercised experienced judgment in making tactical decisions not to call the witnesses in question. The court's findings are fully supported by the record. It is clear that defendant's trial counsel did not utilize these witnesses because, in his judgment, their testimony was

---

[101]Id., p. 68.

[102]Id., p. 53.

[103]Id., p. 54.

[104]Id., pp. 62-64.

[105]Id., p. 64.

either irrelevant, unsubstantiated, subject to the jury's misconstruction or even interpretation favorable to the prosecution, or not admissible under Louisiana law. This reasoning is exactly why such strategic decisions are left to counsel and cannot be characterized as constitutionally deficient.

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused. Where the prosecution's case is less than compelling . . ., the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony.

Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted).

Brunet has not shown that his trial counsel's decisions not to call the proposed witnesses were objectively unreasonable or that they had a negative impact on the verdict. A thorough reading of the transcript reflects that Alcock utilized his cross-examination of B.S. and questioned other witnesses in a manner to point out each variance in B.S.'s statements and testimony, all in an attempt to challenge her credibility. This included numerous questions to B.S. about her failure to tell the whole truth during the investigation and her lies in her letters and e-mails.[106] Counsel ably attempted to challenge her veracity before the jury without relying on irrelevant and inadmissible testimony from other witnesses. Otherwise, he had no legal basis to present evidence of

---

[106]St. Rec. Vol. 1 of 4, Trial Transcript, Volume III, pp. 48, 51, 94, 97, 98, 99, 103, 9/12/07.

B.S.'s prior sexual conduct with other persons.  <u>State v. Zeringue</u>, 862 So.2d 186, (La. App. 5th Cir. 2003) (La. Code Evid. art. 412 is meant to protect the victim of sexual assault from having her sexual history with persons other than the defendant made public).

The fact that defense counsel's trial strategy was not wholly successful, <u>i.e.</u> that Brunet was convicted on four of the eleven counts, does not mean that his actions were deficient.  <u>See</u> <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted).  Brunet has provided no basis to undermine the deference due his counsel's trial and evidentiary decisions, tactics and strategy.

As determined by the state courts, defendant's trial counsel relied upon his many years of experience with juries and utilized the law and sound trial strategy to resolve that the witnesses would not be beneficial to the defense.  Both counsel and the state courts are entitled to great deference on this point.  Brunet has not established that the state courts' denial of relief was contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to relief on this claim.

B.    <u>Failure to Move for Mistrial</u>

Brunet argues that his ability to challenge B.S.'s credibility was compromised by her mother's breach of the sequestration order[107] and counsel's failure to move for mistrial based on that breach.

The record indicates that on the second day of trial, the prosecutor notified the court that B.S.'s mother "may have gone and spoken to her daughter as to the contents of the testimony of both witnesses."[108]  B.S. was not in the courtroom when her friend, Crystal Rials, and her stepsister, Sugeide Rios, testified for the State on the first day of trial.  The prosecutor made the presentation to the court because he thought "it may have been a violation of the sequestration order."[109]  The prosecutor asked that the mother be instructed not to talk about what occurs in the courtroom and that she not be in court.

The state trial court told B.S.'s mother that the sequestration order meant that she could not talk to anyone about the case.  The court indicated that her discussion with B.S. was "a violation of the sequestration order."[110]  The court ordered that she be removed from the courtroom and not return.

---

[107]At the post-conviction hearing, the parties indicated that the sequestration order appeared on page 152 of Volume I of the trial transcript.  In the record provided, that volume is missing pages 125 through 156.

[108]St. Rec. Vol. 1 of 4, Trial Transcript, Volume II, p. 54, 9/13/07.

[109]<u>Id</u>.

[110]<u>Id</u>., p. 55.

During the post-conviction hearing, defendant's trial counsel indicated that he did not recall that the court made a specific finding as to what the conversation was about.[111] Nevertheless, he believed that the court was mistaken, since B.S.'s mother was not a witness subject to the sequestration order. Counsel concluded that there could be no violation of a sequestration order by a person who was not subject to that order. Counsel also pointed out that Rials and Rios testified with regard to what happened in Florida, which was not one of the charges in the case.[112] In addition, he felt that their testimony was favorable to the defense, since each girl testified that she did not see Brunet enter or in B.S.'s hotel room.

Counsel testified that he did not move for a mistrial because there was no reporting of what was actually said outside of the courtroom.[113] He also did not believe such a motion would have been successful since B.S.'s mother was not under the sequestration order. He also believed Brunet would not have wanted the trial interrupted or postponed. Further, counsel felt that the remedial action taken by the court was proper.[114]

The state trial court also heard testimony from the original prosecutor and argument from the parties that La. Code Evid. art. 615 gives the victim the right to be

---

[111]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 18, 11/3/10.

[112]Id., p. 19.

[113]Id., p. 23.

[114]Id., pp. 24, 26.

present in the courtroom.[115] Thus, as eventually concluded by the state court, even if the mother disclosed the witness testimony to B.S., it was testimony B.S. was allowed to hear, and there was no prejudice to the defense.[116] The state trial judge, who also presided over the post-conviction hearing, indicated that he may have been wrong in declaring the interaction a violation of the sequestration order since the mother was <u>not</u> a witness.[117] He also indicated that he was not aware at the time of his ruling that she was not a witness. The state trial court denied relief on this issue as meritless.

Under La. Code Evid. art. 615, a victim and her family are allowed to be present during a trial as an exception to the sequestration order.

> **A. As a matter of right.** On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
>
> **B. Exceptions.** This Article does not authorize exclusion of any of the following: . . .
> (4) The victim of the offense or the family of the victim.
>
> **C. Violation of exclusion order.** A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or

---

[115]<u>Id</u>., pp. 26-27, 112, 133.

[116]<u>Id</u>., pp. 133, 143-44.

[117]<u>Id</u>., p. 27, 143.

> when such sanctions are insufficient, disqualification of the
> witness.

La. Code Evid. 615; <u>State v. Johnson</u>, 833 So.2d 508, (La. App. 4th Cir. 2002) (victim had a right to be in courtroom when her mother testified).

The state trial judge admitted at the post-conviction hearing that he may have misunderstood and erred in his declaration that the sequestration order had been violated, something Brunet's trial counsel had already surmised. The record and the law establish that there was no violation of the sequestration order, since the mother was not a witness and B.S. as the victim was not subject to the sequestration order and was permitted by state law to hear all of the court proceedings and witness testimony. Brunet has not shown any error or deficiency in his trial counsel's failure to address a violation that actually never happened.

Even if there had been a violation or one was perceived at the time, under La. Code Evid. art. 605(C) the appropriate response to a violation of a sequestration order is for a court to impose sanctions, admonish the jury, or even disqualify a witness. The state trial judge sanctioned B.S.'s mother, an act defense counsel considered appropriate at the time. There was no provision in Louisiana law that would have prompted or required defense counsel to assert a motion for mistrial for a mere violation of a sequestration order.

Brunet nevertheless argues that any violation of the sequestration order prejudiced his ability properly to cross-examine B.S., who was told about the witness testimony. In relevant part, Louisiana law provides that a mistrial shall be ordered and the jury dismissed "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial ... ." La. Code Crim. P. art. 775 (emphasis added). In this case, Brunet has failed to present a basis for a mistrial to have been urged by his counsel.

Brunet has not established that he was denied a fair trial, or prejudiced in any way, by the conversation between B.S. and her mother or the failure of counsel to file a motion for mistrial. There is no showing that it was "impossible" for him to receive a fair trial. Under the circumstances of his case, as found by the state trial court, the testimony of the two teenage girls was essentially favorable to the defense. Both girls testified that, while in Florida, they did not see Brunet enter B.S.'s hotel room, where B.S. claimed they had sexual intercourse. A review of B.S.'s testimony does not reflect that defense counsel's ability to cross-examine her thoroughly on this point was impeded in any way.

In addition, as counsel noted, there was no charge arising from the alleged sexual activity in Florida. As discussed in detail above, this evidence was admitted over the objection of defense counsel as part of the on-going pattern of behavior, all of which Brunet was able to deny when he testified.

Brunet has not shown that he was denied a fair opportunity to cross-examine B.S. or challenge the State's case. Louisiana law did not require or provided no support for his counsel to move for a mistrial where no basis for such a motion existed. Counsel did not act deficiently or prejudicially in failing to present a meritless motion. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

Brunet has not established that the state courts' denial of relief was contrary to, or an unreasonable application of, Strickland. He is not entitled to relief on this claim.

C.      References to Consensual Conduct

Brunet argues that his trial counsel referred to the sexual activity as "consensual sex" rather than as "alleged" activity, which left the jury with the impression that Brunet was admitting to an element of the crimes charged. Brunet's post-conviction counsel questioned his trial counsel at length about his choice of words in that regard. As shown at the post-conviction hearing, each of the incidents addressed by Brunet occurred during voir dire, not at trial.

Defendant's trial counsel testified that he referenced the consensual nature of the crime to gain feedback and reaction from the voir dire panel:[118]

> Well, of course, carnal knowledge, as you're aware, is consensual and not -- there's no issue of force whatsover in it. As far as educating prospective jurors as to what they were going to be listening to, . . ., in the voir dire you alert them to anything that you feel might be unsettling to them such as the disparity in the age between the defendant, 46, and the alleged victim, 16, for the purpose of getting their gut or instinctive reaction or answer and/or observing their body language when they give the answer.

Brunet's post-conviction counsel questioned trial counsel specifically about four discrete points in the voir dire transcript, where counsel did not use "alleged" before referring to the consensual sexual conduct.[119] Each time, defense trial counsel essentially responded that the references were taken out of context, and that the jury was made well aware that Brunet was challenging the charges to which he had plead not guilty.

As to the first such reference ("The female who is alleging the inappropriate activity, was 16. Glenn was 46 years of age."[120]), defense trial counsel reiterated that the statement was taken out of context, that he in fact used the word "alleging" to preface the sentence, and that he made no concession that they had sex.[121]

---

[118]St. Rec. Vol. 3 of 4, Hearing Transcript, pp. 43-44, 11/3/10.

[119]Id., p. 46-47.

[120]St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 70, l. 24-27, 9/10/07.

[121]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 46, 11/3/10.

The second statement was: "Okay. And its being on your mind, and the State bringing a sex offense - - and this is in fact a sex offense. Even though it's consensual, it's a sex offense. Do you feel that would be on your mind as you were considering the evidence in this case?"[122]  Defense trial counsel recalled that this question was in direct response to a prospective juror who had a child at the same school or a child the same age as B.S., and he was trying to illicit from her how that would affect her verdict.[123]

The third statement was: "Now, the charge is consensual sex between a 16 year old student and Glenn Brunet at the time was 46 of age. Would you knowing those facts without any more influence you in any other way or the other in this case?"[124]  Defense trial counsel stated that he was trying in this instance to illicit a reaction during voir dire from potential jurors about the disparity in their ages, the sexual contact and Brunet's position at the school.[125]

Finally, defense trial counsel was questioned about the following statement: "I mean there are some jurors that might feel in circumstances that someone - - somewhat upsetting to feel that, well, there is a resource officer there and a student - - 16 year old student had sex with him, although not forced sex, this is consensual sex between two

---

[122]St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 82, l. 22-27, 9/10/07.

[123]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 47, 11/3/10.

[124]This portion of the trial transcript, p. 125, is missing. This is quoted from the post-conviction hearing transcript. St. Rec. Vol. 3 of 4, Hearing Transcript, p. 48, 11/3/10.

[125]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 48-49, 11/3/10.

people."[126]  Trial counsel testified that this too was directed at a perspective juror who had a daughter at the school or a daughter the same age as B.S. and that he also wanted to make sure that the jury did <u>not</u> think Brunet was charged with rape.

On this issue, the state trial court denied post-conviction relief, finding that defense counsel did not err or cause prejudice by his voir dire statements regarding the consensual nature of the acts.  The court instead found that counsel used his experience to make statements that would avoid alienating the jury.  This was the last reasoned opinion on the issue.

I find that the transcript of the voir dire examination establishes that Brunet's arguments at best focus on statements taken out of context.  Reading as a whole, the transcript shows that counsel never admitted to the jury panel that Brunet had consensual sex with B.S.  The transcript shows that Alcock repeatedly used the word "alleged" in prefacing his statements and when referring to the consensual sexual activity.  He repeatedly referred to B.S. as the alleged victim while speaking with the prospective jurors.[127]  In fact, counsel specifically stated that B.S. was "<u>alleging</u> inappropriate activity" in the first passage read at the hearing by Brunet's post-conviction counsel.[128]

---

[126]This portion of the trial transcript, p. 126 (erroneously referred to as page "26"), is missing. This is quoted from the post-conviction hearing transcript.  St. Rec. Vol. 3 of 4, Hearing Transcript, p. 49, 11/3/10.

[127]<u>See</u>, <u>e.g.</u>, St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 70, l. 18, 24, 32, p. 71, l. 10, p. 72, l. 5.

[128]St. Rec. Vol. 1 of 4, Trial Transcript, Volume I, p. 70, l. 24-27, 9/10/07 (emphasis added).

Read in context, the second statement relied on by post-conviction counsel was made by trial counsel in response to a panel member indicating that her nine-year-old granddaughter had been the victim of a sex offense and that the perpetrator had been convicted five years before Brunet's trial.[129]  Counsel asked her if she was having a hard time putting that out of her mind, and she answered affirmatively.  In response, counsel specifically responded, "Okay.  And its being on your mind, and the State bringing a sex offense - - and this is in fact a sex offense. Even though it's consensual, it's a sex offense. Do you feel that would be on your mind as you were considering the evidence in this case?"  Read in context, counsel's voir dire was attempting to distinguish between the forced sex offense suffered by her granddaughter and the consensual sex alleged against Brunet. There was no admission or concession that Brunet actually had sex with B.S.

With respect to the third statement, the transcript shows that defense counsel prefaced the question with reference to the <u>charge</u>, specifically stating "the <u>charge</u> is consensual sex between a 16 year old student and Glenn Brunet at the time was 46 of age."[130]  That clearly is a reference to the State's <u>allegations</u> against Brunet and not a commentary on Brunet's guilt or innocence or an admission that Brunet engaged in consensual sex with B.S.

---

[129]<u>Id.</u>, pp. 81-82.

[130]St. Rec. Vol. 3 of 4, Hearing Transcript, p. 48, 11/3/10 (emphasis added).

As for the fourth statement, defense counsel indicated that he was again responding to a specific statement by a prospective juror who had a child of similar age or at the same school, again attempting to clarify or distinguish between a charge of consensual sex and rape. Counsel was legitimately focused on how the jury would perceive the age disparity and Brunet's role at the school. He also had concern that these factors might be confused by prospective jurors as indicators of force or rape. He exercised sound judgment in emphasizing to the jury that the allegations were <u>not</u> of forced sexual activity, as had apparently been suffered by family members of at least two potential jurors.

Having thoroughly reviewed the voir dire examination and the trial testimony, I do <u>not</u> find that defense trial counsel at any time admitted Brunet's guilt or implied his guilt on any element of the crime charged. As found by the state court, counsel acted within the ambit of sound, deliberate and prudent strategy during jury selection and at trial. Both counsel and the state courts' findings concerning his performance are entitled to due deference in that regard.

Brunet has not established constitutionally deficient performance or prejudice arising from his trial counsel's actions. The divided verdict of guilty on four counts and not guilty on seven counts also shows that trial counsel was partially successful and did not confuse the jury or lead them to believe that Brunet conceded that he in fact had

consensual sex with B.S. The state courts' denial of relief was neither contrary to nor an unreasonable application of <u>Strickland</u>. Brunet is not entitled to relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Glenn Michael Brunet for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[131]

New Orleans, Louisiana, this _____22nd_____ day of January, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[131]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.